2013 VT 115

## LaFrance Architect d/b/a Lake Architectural, LLC v. Point Five Development South Burlington, LLC

[91 A.3d 364]

No. 12-203

Present: **Reiber, C.J., Skoglund, Burgess and Robinson, JJ., and Bent, Supr. J., Specially Assigned**

Opinion Filed December 20, 2013

Motion for Reargument Denied January 23, 2014

---

*Christina A. Jensen* of *Lisman Leckerling, P.C.*, Burlington, for Plaintiff-Appellee.

*Thomas C. Nuovo* and *Nicole A. Killoran* of *Bauer, Gravel, Farnham*, Burlington, for Defendant-Appellant.

¶ 1. **Reiber, C.J.** Defendant appeals the trial court's refusal to vacate a default judgment against defendant. We hold that the trial court improperly declined to consider the strength of defendant's proffered defenses to the underlying action in reviewing defendant's motion to vacate the default judgment, but that defendant's Rule 60(b) motion did not establish a prima facie case to support a meritorious defense. We therefore affirm the trial court.

¶ 2. This dispute arose from a 2009 contract between plaintiff LaFrance Architect, d/b/a Lake Architectural, and defendant Point Five Development South Burlington, LLC. Under this contract, plaintiff was to provide defendant architectural services for the construction of a Walgreens in South Burlington. On January 31, 2011, plaintiff sent an invoice to defendant for services rendered under the contract. On March 4, two days after the invoice was payable and three days after the store opened, defendant sent plaintiff a letter indicating that defendant was terminating plaintiff's services due to an unspecified failure to fulfill the contract and unspecified "significant design errors that caused additional costs." Plaintiff responded by filing notice of a mechanic's lien against defendant in the South Burlington Land Records. On March 30, defendant secured a bond to discharge the mechanic's lien, but failed to send a copy of the bond to plaintiff.

¶ 3. On June 16, plaintiff commenced action to perfect its mechanic's lien by filing in superior court a verified complaint with a request for attachment as well as a claim for damages. Because the parties' contract contained mandatory mediation and arbitra-

tion provisions, plaintiff also filed a motion for stay, requesting that the court consider its motion for attachment but then stay proceedings pending mediation and arbitration as required by the contract.

¶ 4. On June 27, the Chittenden County sheriff's office personally served defendant corporation's registered agent with the summons, complaint, motion for writ of attachment and related filings, the order setting an attachment hearing on August 10, and a motion for stay. Defendant's registered agent was away, but his law partner accepted service.[1] The return of service was filed with the court on July 1.

¶ 5. The registered agent's law partner promptly forwarded a copy of the complaint to defendant's New York attorney with a note flagging the August 10 attachment hearing and a request to let her know if defendant needed assistance with the matter. Without reading the attachment, defendant's New York attorney, in turn, forwarded the message to an agent of defendant. The agent apparently inferred that the email related to the mechanic's lien for which defendant was bonding, and did not actually open the email attachments.[2] Neither the New York attorney nor the agent read the pleadings nor took any action to respond or follow up.

¶ 6. On August 9 — the day before the scheduled attachment hearing — plaintiff moved for default judgment, continuance of the attachment hearing, and consolidation of the attachment hearing with the damages hearing. Plaintiff did not at that time request that the court respond to its motion for a stay.

¶ 7. Because defendant never answered or entered an appearance in the case, defendant received no notice of plaintiff's request for default judgment, the trial court's August 10 order entering default, or the hearing scheduled to take evidence on damages. After a hearing on the attachment and damages on September 22, 2011, the trial court issued an order of approval for an attachment in the amount of $69,024.90. On September 30, the court issued a final judgment order awarding plaintiff a judgment of $69,024.90 against defendant, in addition to interest and costs. Defendant did

---

[1] Defendant does not contest the effectiveness of service upon its registered agent's law partner.

[2] For the purposes of this appeal, we accept defendant's representations as to the actions and understandings of counsel and of client's agent.

548

not participate in the hearing or receive notice of the attachment and judgment order.

¶ 8. Only after plaintiff commenced an action in New York to domesticate the Vermont judgment did defendant respond by filing a motion in the trial court here. On March 9, 2012, defendant moved for relief from judgment pursuant to Vermont Rules of Civil Procedure 55 and 60. Defendant requested relief "on the grounds of mistake, inadvertence, excusable neglect and the Plaintiff's failure to follow the compulsory Mediation and Arbitration provisions of the contract." The court denied this motion, concluding that this type of "law office error" does not qualify as an excusable "mistake" under Rule 60(b), and explicitly refused to consider any of the defenses on the merits offered by defendant. Defendant appeals.

I.

¶ 9. ■■■ "A motion for relief from judgment brought under [Rule] 60(b)(2) is addressed to the sound discretion of the trial court, and its ruling will not ordinarily be disturbed unless it clearly appears from the record that such discretion was withheld or abused." *Desjarlais v. Gilman*, 143 Vt. 154, 157, 463 A.2d 234, 236 (1983).[3] In evaluating motions for relief from judgment in the context of default judgments, we have recognized that "[a] judgment by default effectively deprives a defendant of an opportunity to have the merits . . . determined through the normal adversary judicial process." *Id.* Therefore, we noted the general presumption in favor of "resolving litigation on the merits, to the end that fairness and justice are served." *Id.* at 158-59, 463 A.2d at 237. On the other side of the scale, however, are the justice system's interests in efficiency and finality of judgments, interests which motivate the rigidity of Rule 60(b). See *John A. Russell Corp. v. Bohlig*, 170 Vt. 12, 24, 739 A.2d 1212, 1222 (1999) ("[Rule 60] is not an open invitation to reconsider matters concluded at trial, but should be applied only in extraordinary circumstances." (quotation omitted)); *Kennerly v. Aro, Inc.*, 447 F. Supp. 1083, 1087 (E.D. Tenn. 1977) ("[I]t is not the purpose of this Court . . . to subvert the plain provisions of [the analogous federal Rule 60] by such

---

[3] Defendant relied on Rules 55(c) and 60(b) in its motion to set aside the default judgment. Rule 55(c) provides: "If a judgment by default has been entered, the court may set it aside in accordance with Rule 60(b) and not otherwise." Accordingly, we analyze defendant's motion pursuant to Rule 60(b).

liberality and contributing to its becoming meaningless; it is to be construed . . . 'to secure the just, *speedy*, and inexpensive determination of every action.' " (quoting F.R.C.P. 1)).

¶ 10. Beyond preserving efficiency and finality, Rule 60(b) respects the discretion of the trial court and the need for flexibility to manage its own docket. See *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003) ("[T]he legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced — where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the [time]. bar."). This consideration is especially compelling in civil cases with sophisticated parties represented by knowledgeable counsel, such as the case here. See *In re Town of Killington*, 2003 VT 87A, ¶¶ 17, 19, 176 Vt. 60, 838 A.2d 98 (taking an "appropriately hard line when it comes to determining when neglect that stems from factors totally within the control of a party or its attorney is 'excusable,' " where neglect stemmed from an "internal [law] office procedure breakdown" (quotation omitted)); see also *United States v. Hooper*, 43 F.3d 26, 28-29 (2d Cir. 1994) (affirming denial of a filing extension where delay resulted from legal assistant's ignorance of the rules); cf. *Courtyard Partners v. Tanner*, 157 Vt. 638, 639, 595 A.2d 287, 288 (1991) (mem.) (lifting a default judgment where defendants' position on the merits was strong and defendants were unrepresented).

¶ 11. In *Desjarlais*, we urged the trial court to consider the following factors when conducting the Rule 60(b) analysis: "whether the failure to answer was the result of mistake or inadvertence, whether the neglect was excusable under the circumstances, and whether the defendant has demonstrated any good or meritorious defense to the plaintiff's claims." 143 Vt. at 157, 463 A.2d at 237. With respect to the "excusable neglect" factor, courts should be particularly circumspect "when the initial fault, at least, appears to be that of a defendant's attorney." *Id.* Concerning the "meritorious defenses" factor, the trial court should give substantial weight to a meritorious defense when determining whether to vacate a default judgment. See *Courtyard Partners*, 157 Vt. at 639, 595 A.2d at 288 ("Although the trial court should first consider the degree of defendants' negligence in failing to appear, even a willful default may be excused if

defendants' position on the merits is so strong that it would be unjust to affirm the judgment.").

¶ 12. In *Courtyard Partners*, we reversed the trial court's denial of a tenant's motion to set aside a default-like judgment in favor of a landlord because "defendants' defenses, as presented to this Court, appear to be strong, defendants' negligence was not culpable, defendants were unrepresented, and the motion was made promptly, within the appeal period." *Id.* In *Desjarlais*, we affirmed the trial court's denial of a motion to set aside a default judgment where defense counsel had failed to file an answer. Defendants themselves argued that they were chargeable with neglect for failing to follow up on the status of their case for many months, and that their claims of meritorious defenses consisted of mere conclusory allegations. 143 Vt. at 158, 463 A.2d at 237.

¶ 13. In this case, defendant asserted in its motion for relief from judgment that it "has good and meritorious defenses to the Plaintiff's claim," arising from a notice issue and the mediation clause. Defendant also referenced its proposed answer, affirmative defenses, and verified counterclaim, which included failure to state a claim upon which relief can be granted, set off, and plaintiff's noncompliance with the arbitration and mediation provisions of the contract as affirmative defenses.

¶ 14. ▮ In light of its conclusion that an internal law office failure like that claimed here did not amount to excusable neglect, the trial court declined to exercise its discretion to consider defendant's claimed defenses, stating: "Defendant may well have had defenses, including contract provisions requiring mediation, to the suit. These are lost when default is entered." The court relied on a decision in which we concluded that an internal law office breakdown did not constitute "excusable neglect" warranting extension of a hard and fast appeal deadline. See *Town of Killington*, 2003 VT 87A, ¶ 19. However, our opinion in *Town of Killington*, and the four-factor test articulated in that decision for evaluating a claim of excusable neglect in the context of a failure to timely appeal, did not address the specific circumstances of a default judgment. As noted above, we have held that our Rule 60(b) analysis in the context of a Rule 55(c) motion to set aside a default judgment requires consideration of a different set of factors than the ordinary Rule 60(b) analysis. *Supra*, ¶¶ 11-12. By

expressly disregarding whether defendant had meritorious defenses, the trial court departed from the proper framework for evaluating motions to set aside default judgments and declined to consider a critical factor in the overall analysis.

¶ 15. We take no issue with the trial court's conclusion that the neglect alleged here does not rise to the level of "excusable neglect" that would ordinarily warrant setting aside a nondefault judgment. See *Town of Killington*, 2003 VT 87A, ¶¶ 16-17. The failure to open a critical email, whether by counsel or the client, is not the kind of neglect we have ever characterized as "excusable." However, because the judgment in question here was a default judgment, the trial court should also have considered: (1) the degree of prejudice suffered by the plaintiff as a result of defendant's delay in answering; (2) the presence of material issues of fact and prima facie evidence of meritorious defenses; (3) the significance of the interests at stake; and (4) the degree of defendant's culpability. See, e.g., *Courtyard Partners*, 157 Vt. at 639, 595 A.2d at 288 (setting aside default judgment where tenant defendant's negligence was not "culpable"); *Parsons v. Consol. Gas Supply Corp.*, 256 S.E.2d 758, 762 (W. Va. 1979) (identifying first three of four factors listed above); *Camping World, Inc. v. McCurdy*, 111 So. 3d 738, 740-41 (Ala. Civ. App. 2012) (trial court's discretionary authority to set aside default judgments should not be exercised without consideration of "1) whether the defendant has a meritorious defense; 2) whether the plaintiff will be unfairly prejudiced if the default judgment is set aside; and 3) whether the default judgment was a result of the defendant's own culpable conduct"); cf. *Desjarlais*, 143 Vt. at 158, 463 A.2d at 237 (affirming refusal to set aside default judgment where defendants themselves were negligent in responding). Because the trial court failed to consider these factors, we conclude there was error.

## II.

¶ 16. Although we conclude that the trial court erroneously failed to consider potential meritorious defenses to plaintiff's claims, we need not remand this case for further proceedings if we conclude as a matter of law that defendant's Rule 60 motion did not raise any meritorious defenses. Accordingly, we consider the two "meritorious defenses" urged by defendant.

## A.

¶ 17. One of the "meritorious defenses" defendant raised in its verified counterclaim and again on appeal is based on alleged deficiencies in the services provided by plaintiff. We have not decided whether a counterclaim or set off constitutes a "meritorious defense" for the purpose of a motion to set aside a default judgment.

¶ 18. ■ We previously considered the res judicata effect of a default judgment where the defaulting party did not raise a compulsory counterclaim. We held that "courts have given default judgments full effect and . . . a compulsory counterclaim omitted from an action that terminates in a default judgment will be barred from any subsequent suits." *Pomfret Farms Ltd. P'ship v. Pomfret Assocs.*, 174 Vt. 280, 286, 811 A.2d 655, 661 (2002) (quotation omitted); see also *Letourneau v. Hickey*, 174 Vt. 481, 483, 807 A.2d 437, 440 (2002) (mem.) (quotation omitted). Given that compulsory counterclaims are conclusively adjudicated by a default judgment, we conclude that a counterclaim arising from the same transaction as the underlying complaint, such that a judgment in the action would be res judicata as to that counterclaim, can constitute a "meritorious defense."

¶ 19. ■ The question, then, is whether defendant's verified counterclaim was compulsory. Rule 13(a) provides:

> A pleading in an action . . . shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . .[4]

In this case, defendant's counterclaim — for deficiencies in performance of the contract — is logically related to plaintiff's

---

[4] Counterclaims are not compulsory under the rule if "the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim." V.R.C.P. 13(a). Although plaintiff's complaint in this case was accompanied by a motion for a writ of attachment, the complaint itself sought a judgment against defendant for failure to pay on the contract, and the trial court awarded plaintiff judgment on this basis. See *Pomfret Farms*, 174 Vt. at 282-83, 811 A.2d at 658 (finding that suit subjecting defendant to personal liability — even where portion of suit related to attachment would not — makes counterclaims compulsory). Rule 13(a) thus applies.

claim for nonpayment. See *Stratton v. Steele*, 144 Vt. 31, 35, 472 A.2d 1237, 1239 (1984) (stating that counterclaim has logical relationship to original claim if it arises from same aggregate of operative facts). Thus, we conclude that a counterclaim in the nature of defendant's counterclaim here, asserting set off on the ground of plaintiff's deficient performance, could constitute a meritorious counterclaim supporting a decision to set aside a default judgment.

¶ 20. ■ The next question is whether defendant's pleadings support its "meritorious defense" claim on this point. "It is incumbent upon a party seeking relief from a judgment not only to meet the requirements of [Rule] 60(b), but also to show, plead or present evidence of facts which, if established, would constitute a meritorious defense to the action. This policy recognizes that it would be an idle exercise and a waste of judicial resources for a court to set aside a judgment if, in fact, there is no genuine justiciable controversy." *Maynard v. Nguyen*, 274 P.3d 589, 591 (Idaho 2011) (quotation omitted). Where facts are in issue, an evidentiary hearing should precede a decision on the motion, unless the court finds that the motion is totally lacking in merit. *Manosh v. Manosh*, 160 Vt. 634, 635, 648 A.2d 833, 835 (1993) (mem.). However, the grounds for the motion must be pled with sufficient particularity to warrant a hearing and potential relief. See *Fed. Home Loan Mortg. Corp. v. De Souza*, 85 So. 3d 1125, 1126 (Fla. Dist. Ct. App. 2012) (a defendant seeking relief from judgment based on fraud must raise a prima facie case of fraud, and "must specify the fraud with particularity").

¶ 21. ■ In this case, defendant's Rule 60(b) motion does not include detailed allegations to support its general assertion of meritorious defenses and counterclaims based on plaintiff's performance; instead, defendant cites to its contemporaneously filed answer and verified counterclaim in support of its "meritorious defenses" argument. That answer and counterclaim, in turn, assert without any specificity that plaintiff had made design errors and errors related to the demolition, site, roof and building for the project, causing defendant to incur significant additional costs and expense. Defendant's motion does not identify any specific errors, and does not recite any specific facts supporting its ultimate allegation that plaintiff made errors. Defendant's counterclaim may be sufficiently specific to satisfy the broad requirements of

notice pleading under Rule 8(a), but is not detailed enough to satisfy the more exacting standards of a motion to set aside a judgment under Rule 60(b). See V.R.C.P. 8, Reporter's Notes ("[T]he rules do not require a specific and detailed statement of the facts which constitute a cause of action, but simply a statement clear enough to give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." (quotation and citations omitted)). Accordingly, we conclude that defendant's Rule 60(b) motion did not plead a prima facie case of a meritorious defense arising from plaintiff's allegedly deficient performance with sufficient particularity to warrant remand for the trial court's consideration.

B.

¶ 22. Defendant also points to the mandatory mediation and arbitration clauses in the contract between the parties as a defense to the trial court's judgment. Given defendant's delay in asserting its arbitration rights, however, we hold that defendant's conduct amounted to an implicit waiver and thus does not constitute a meritorious defense for purposes of Rule 60(b). Therefore, it is unnecessary to remand the case to the trial court, since defendant has no meritorious defenses and cannot prevail under Rule 60(b) as a matter of law.

¶ 23. ▮▮▮ The competing interests underlying Rule 60, *supra*, ¶¶ 9-10, are further complicated in this case by the general policy favoring arbitration, as articulated in the Vermont Arbitration Act, see 12 V.S.A. § 5652(a) (providing that a written arbitration agreement "creates a duty to arbitrate, and is valid, enforceable and irrevocable"), and in Vermont case law. *Lamell Lumber Corp. v. Newstress Int'l, Inc.*, 2007 VT 83, ¶ 9, 182 Vt. 282, 938 A.2d 1215 ("Vermont law and public policy strongly favor arbitration as an alternative to litigation for the efficient resolution of disputes." (quotation omitted)). The presumption in favor of arbitration, however, must be viewed within the context of its underlying purpose: to provide speedy, cost-effective resolution of disputes. *Id.* ¶ 9. To allow a party to "cr[y] arbitration" in order to undo the consequences of its own errors would turn the rationale of arbitration on its head. *Menorah Ins. Co. v. INX Reins. Corp.*, 72 F.3d 218, 223 (1st Cir. 1995) (quotation omitted). In *John Wiley & Sons, Inc. v. Livingston*, the U.S. Supreme Court recognized the

danger in allowing parties to use arbitration clauses as part of an elaborate feet-dragging exercise. 376 U.S. 543, 558 (1964). Although it ultimately upheld the arbitration requirement in that case, the Court declined to adopt a distinction between substantive and procedural issues for the purpose of determining arbitrability, because it would create "opportunities for deliberate delay and the possibility of well-intentioned but no less serious delay . . . to the disadvantage of the parties." *Id.*

¶ 24. ■■■ Other courts have stringently enforced the doctrine of waiver using reasoning similar to *Wiley* — to prevent parties from asserting arbitration as a cover for their own mistakes or tactical errors. See, e.g., *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat,* 289 F.3d 434, 438 (6th Cir. 2002); *Menorah,* 72 F.3d at 223; *Austin Energy, LLC v. Ecolumens, LLC,* No. CV 11-5749, 2012 WL 3929956, at *1 (E.D.N.Y. Aug. 13, 2012). Further, we have recognized that the doctrine of waiver "ensure[s] that [arbitration] remains an effective 'alternative dispute mechanism rather than another expensive and time consuming layer to the already complex litigation process.'" *Union Sch. Dist. #45 v. Wright & Morrissey, Inc.,* 2007 VT 129, ¶ 9, 183 Vt. 555, 945 A.2d 348 (mem.) (quoting *Joder Bldg. Corp. v. Lewis,* 153 Vt. 115, 120, 569 A.2d 471, 473 (1989)).

¶ 25. ■■■ Given the policy considerations behind Rule 60(b) and alternative dispute resolution, we hold that defendant has waived its right to arbitrate and thus cannot assert any meritorious defenses as a matter of law. For purposes of Rule 60(b), "[i]t is incumbent upon a party . . . to show, plead or present evidence of facts" to show the meritorious defense, in this case, that defendant was entitled to arbitration. *Maynard,* 274 P.3d at 591 (quotation omitted). Although waiver is generally a factual issue for the trial court, an appellate court can nevertheless decide that, as a matter of law, it would be "a waste of judicial resources for a court to set aside [the] judgment" because "there is no genuine justiciable controversy." *Id.*

¶ 26. ■■■ In determining whether there was waiver, several factors should be considered, including: the timing of the request, the extent that the party seeking arbitration has participated in litigation, and "whether the party opposing arbitration has suffered prejudice through the incursion of litigation time, costs, and expenses." *Lamell,* 2007 VT 83, ¶ 11. This inquiry must take into

account the "entire course of conduct" of the moving party. *Menorah*, 72 F.3d at 221.

¶ 27. ■ Defendant argues that because its delay was inadvertent, it has not waived its arbitration rights. Although this inadvertence conclusively demonstrates that there was no explicit waiver, which requires that an offer to arbitrate be "expressly declined," *id.*, it does not foreclose a finding of implicit waiver. To the contrary, the existence of the multi-factor test articulated in *Lamell* implies that, even in the absence of a defendant's participation in litigation, a delay in filing alone *may* constitute waiver if prejudice to the party not seeking arbitration can also be shown. 2007 VT 83, ¶ 11 (describing the factors involved in waiver); see also *Gen. Star*, 289 F.3d at 438 ("[A] party may waive [its] right [to arbitration] by delaying its assertion to such an extent that the opposing party incurs actual prejudice."); cf. *Morrissey*, 2007 VT 129, ¶ 12 (rejecting waiver based on delay because there was no prejudice).

¶ 28. ■ Here, there was both delay and prejudice. Defendant was given ample notice of plaintiff's interests and intent to sue in this case. Plaintiff filed a mechanic's lien in the South Burlington Land Records on March 8, 2011, and a superseding Notice of Mechanic's Lien on June 11, 2011. Defendant, in fact, secured a bond to discharge the mechanic's lien, but never sent a copy of the bond to plaintiff. In order to perfect its lien, plaintiff commenced the current action on June 16, 2011 in superior court. Defendant's registered agent was personally served with the summons, complaint, motion for writ of attachment and related filings, the order setting an attachment hearing on August 10, and a motion for stay. Because the registered agent was out of town, his law partner accepted service and promptly forwarded a copy of the pleadings to defendant's New York attorney, who then forwarded the message and attachment to the Point Five attorney. The email had the subject line "Point Five law suit," and stated the following: "[A]ttached is a copy of the pleadings served this afternoon. [Defendant's registered agent] is away until next Wed so I took service. A hearing is set for August 2010. Let me know if your client needs assistance so we can plan accordingly."

¶ 29. Defendant does not contest that it was properly served with the summons and complaint in this case. Yet, inexplicably, defendant did not open the attachment or respond in any way.

Defendant continued to do nothing while the superior court held an evidentiary hearing on September 22, 2011 and issued a writ of attachment and final judgment on September 30, 2011. In fact, defendant did not respond at all until March 9, 2012, after plaintiff commenced an action to domesticate the judgment in New York. Despite the ongoing litigation, defendant waited more than nine months after being properly served before participating. Unlike in *Courtyard Partners*, where this Court found the rationale behind Rule 60(b) to be less compelling because the defendant was unrepresented, 157 Vt. at 639, 595 A.2d at 288, here defendant was amply represented: it received notice of the commencement of this action from a Vermont attorney, through its New York attorney, to its principal, yet another attorney.

¶ 30. ▮▮▮ As a result of this delay, plaintiff suffered prejudice in the form of "litigation time, costs, and expenses." *Lamell*, 2007 VT 83, ¶ 11. Although there is no per se rule regarding the length of delay needed to show prejudice, a delay that forces the other party to conduct substantial litigation can contribute to a finding of prejudice. *Menorah*, 72 F.3d at 222 (finding implicit waiver where the defendant waited over a year to invoke arbitration, and the plaintiff incurred litigation expenses as direct result of defendant's behavior); see also *Gen. Star*, 289 F.3d at 438 (finding waiver where the defendant did not assert its arbitration rights until after the plaintiff had incurred costs of pursuing default judgment). Here, plaintiff was forced to pursue default judgment and to commence action to domesticate the judgment in New York before defendant mustered a response.

¶ 31. Given these considerations, we hold that defendant implicitly waived its right to arbitrate, and thus the arbitration clause does not constitute a meritorious defense.

*Affirmed.*

¶ 32. **Robinson, J.,** concurring in part, dissenting in part. I have no particular objection to an ultimate outcome that keeps the trial court's default judgment in place, but I believe the path the majority takes to that result widens a narrow exception to the enforceability of mandatory arbitration clauses, undermining this Court's express preference for enforcing arbitration clauses; strays from our general approach to waiver; undoes the requirement that a court at least consider the merits of a defendant's defenses as one of a number of factors to be considered in

connection with a motion to set aside a default judgment; and extends the concept of waiver to a factual setting where it does not readily apply. For these reasons, I respectfully dissent from section II.B. of the majority's opinion, relating to the question of whether we should remand this case to the trial court for consideration of the requisite factors, including the prejudice to plaintiff of setting aside the default judgment, the nature of defendant's neglect, and the strength of defendant's defense based on the mandatory mediation and arbitration clauses in the contract between the parties.[5]

¶ 33. I note at the outset that the majority's opinion cannot be described in terms of deference to the trial court's wide discretion in connection with motions to set aside judgments. See *ante*, ¶ 23. As the majority rightly concludes as a matter of law, the trial court applied the wrong test in this case, using the general standard we have applied in most Rule 60(b) cases, and failing to consider the various specific factors applicable when a party seeks to set aside a default judgment. See *ante*, ¶ 14. The trial court decided this case, understandably but incorrectly, on the narrow ground that failure to open a critical email by counsel is not the sort of conduct that ordinarily amounts to "excusable neglect." It did not purport to analyze the prejudice to plaintiff that would arise from setting aside its judgment, and did not conclude that defendant had waived its defenses of mandatory mediation or arbitration by virtue of the passage of time since it was served, or since the default judgment. The majority's rationale for affirming the trial court's ultimate decision on defendant's motion originated in this Court, and does not reflect any deference at all to a particular finding of fact or exercise of discretion by the trial court.

¶ 34. This Court has previously emphasized that "Vermont law and public policy strongly favor arbitration as an alternative to litigation for the efficient resolution of disputes." *Lamell Lumber Corp. v. Newstress Int'l, Inc.*, 2007 VT 83, ¶ 9, 182 Vt. 282, 938 A.2d 1215 (quotation omitted). In *Lamell*, a lumber wholesaler and retailer sued the manufacturer of a kiln for breach of contract. The defendant listed the arbitration agreement as an affirmative defense in its answer, but then proceeded to actively litigate the case over the next two years, participating in extensive discovery

---

[5] I concur in the majority's analysis in sections I. and II.A.

and filing motions with the court. *Id.* ¶ 4. One month before trial, the defendant filed a summary judgment motion seeking dismissal of the case on the ground that an arbitration agreement deprived the court of jurisdiction to hear the case. *Id.* The trial court concluded that the defendant had waived the arbitration agreement, and this Court affirmed. On appeal, this Court rejected the defendant's argument ·that an arbitration agreement is jurisdictional and therefore cannot be waived. This Court explained:

> The waiver issue is generally held to be a question of fact to be resolved under the circumstances of each case, considering such factors as the timing of the request for arbitration, the extent to which the party seeking arbitration has participated in the judicial process, and whether the party opposing arbitration has suffered prejudice through the incursion of litigation time, costs, and expenses.

*Id.* ¶ 11. Although the Court did not consider whether the trial court abused its discretion in making the waiver determination, as the issue had not been raised, the above factors all supported the trial court's waiver determination. The defendant had actively participated in the judicial process for over two years, the parties had conducted extensive discovery including depositions, and the defendant had invoked the arbitration agreement at the eleventh hour, on the eve of trial. In *Lamell*, the factfinder concluded that the defendant had waived the agreement after two years of active participation in the judicial process.

¶ 35. Two significant factors distinguish this case from *Lamell* and the others relied upon by the majority in support of its waiver argument. First, as in *Lamell*, in the cases cited by the majority, the party deemed to have waived an arbitration agreement undertook some choice or act or course of conduct that reflected a rejection of arbitration or acquiescence to and acceptance of litigation in court as the means to resolve their dispute. For example, in *Menorah Insurance Co. v. INX Reinsurance Corp.*, 72 F.3d 218, 221 (1st Cir. 1995), a party expressly declined a request to arbitrate an international contract dispute. Subsequently, that party was served and chose not to appear in a court proceeding concerning that dispute. *Id.* at 221-22. It did not invoke the arbitration agreement (the very agreement it had expressly declined to honor) until the plaintiff had gone through

all the necessary steps to secure a judgment in court and then sought to enforce its default judgment in that lawsuit — more than a year after the party was served in that case. Given this course of conduct, as well as the trial court's express finding of prejudice to the plaintiff, the U.S. Court of Appeals for the First Circuit affirmed the trial court's conclusion that the party had waived the arbitration agreement. *Id.* Significantly, the First Circuit declined to adopt a per se rule that a one-year delay is or is not sufficient to support waiver, noting that delay alone is not automatically a source of prejudice. *Id.*[6]

¶ 36. Likewise, in *Austin Energy, LLC v. Ecolumens, LLC*, a defendant demanded arbitration and then, after appearing before the American Arbitration Association, did not participate in further arbitration proceedings. No. CV 11-5749, 2012 WL 3929956, at *1 (E.D.N.Y. Aug. 13, 2012). When the arbitration was suspended and the plaintiff filed suit in court for damages, the defendant did not raise the arbitration agreement but instead opted to default. *Id.* On these facts, the court concluded that the defendant had waived the arbitration agreement. *Id.*; see also *Gen. Star Nat'l Ins.*, 289 F.3d at 438 (involving defendant who waited for seventeen months after actual notice of the lawsuit, while the plaintiff pursued remedy in court and incurred associated costs, before invoking arbitration agreement after entry of default judgment against defendant). In none of the cases cited by the majority was there any indication that a defendant's default resulted from neglect rather than a conscious decision to allow a default judgment, and in most of the cases, the defendant actively participated in court proceedings or affirmatively declined to participate in arbitration.

¶ 37. The second major difference between this case and those cited by the majority is that this is the only case in which an appeals court seeks to make a finding of prejudice and a conclusion of waiver in the first instance. See, e.g., *Menorah*, 72 F.3d at 221 (expressly relying on trial court's finding of prejudice).

---

[6] The periods during which the parties seeking to set aside default judgments failed to invoke arbitration clauses in the cases cited by the majority were longer than the eight-and-one-half-month period in question here. See *Lamell*, 2007 VT 83, ¶ 4 (two years); *Menorah*, 72 F.3d at 220 (one year from filing of suit, longer from refusal of arbitration); see also *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002) (seventeen months).

¶ 38. Not only is the majority's opinion out of step with case law concerning waivers of arbitration agreements, but it is not consistent with our case law concerning waiver more generally. We have held that waiver of a contract right is " 'the intentional relinquishment or abandonment of a known right,' " and have recognized that " 'the act of waiver may be evidenced by express words as well as by conduct.' " *Toys, Inc. v. F.M. Burlington Co.*, 155 Vt. 44, 51, 582 A.2d 123, 127 (1990) (quoting *Lynda Lee Fashions, Inc. v. Sharp Offset Printing, Inc.*, 134 Vt. 167, 170, 352 A.2d 676, 677 (1976)). Waiver "involves both knowledge and intent on the part of the waiving party." *Id.* We have also recognized that the question of waiver is generally one for a factfinder. See, e.g., *id.* at 52, 582 A.2d at 127 ("[T]he basic facts are clear but the inferences to be drawn from the facts and the intentions and purposes of the plaintiff are not clear. A factfinder could find a waiver based on this record, but that conclusion is not commanded as a matter of law."); see also *Lamell*, 2007 VT 83, ¶ 11 (waiver usually a question of fact to be resolved considering a list of factors). In this case, the majority essentially holds that an eight-and-one-half-month delay in invoking an arbitration agreement amounts to a waiver of that agreement, *as a matter of law*, without the need for evidence or factfinding concerning prejudice, without consideration of the reason for the failure to invoke the arbitration agreement, and without regard to a party's knowledge or intent in connection with the purported waiver. I respectfully suggest that in so holding, the majority has established a new test for waiver that is disconnected from the factors normally defining waiver, has stepped into the trial court's role as factfinder, and has done so in a context — enforcement of arbitration agreements — in which we should be particularly wary of expanding the concept of waiver beyond its traditional contours.

¶ 39. The majority's invocation of waiver here is particularly puzzling because the majority explicitly holds that in reviewing a motion to set aside a default judgment, a trial court should consider, among other things, whether a party has meritorious defenses. See *ante*, ¶ 14. By definition, a party who has been subjected to a default judgment has *not* raised his or her defenses; that is the essence of a default judgment. But if the failure to enter an appearance and raise one's defenses, including mandatory arbitration and mediation, amounts to a waiver of those defenses, then what sense does it make to say that a court

reviewing a motion to set aside a default judgment should consider whether the movant has meritorious defenses? The Court's holding seems to be that a court considering a motion to set aside a default judgment should consider, among other factors, defendant's meritorious defenses, except that if defendant has failed to enter an appearance and suffers a default judgment without raising those defenses, they are waived. The majority's analysis in section II.B. swallows up its holding in section I.

¶ 40. Moreover, in this particular case, even if there had been evidence that defendant had knowingly and intentionally avoided the trial court's proceedings after plaintiff served defendant, it would be difficult to infer waiver of the mediation and arbitration agreements as a matter of law. The documents served upon defendant, though not read by it due to neglect, included a motion to stay in which the plaintiff expressly acknowledged the existence of the mediation and arbitration agreements and requested a stay to allow the parties to mediate or arbitrate. The plaintiff explained that the court was authorized to take only the limited action of approving an attachment to secure a potential judgment in plaintiff's favor, but recognized that the court's authority to act in the case was limited to the attachment. On the eve of the attachment hearing, without any acknowledgment to the court of its prior motion for a stay, without any acknowledgment to the court of the mediation and arbitration agreements, and without notice to defendant, which had no legally-protected right to notice because it had not entered an appearance, plaintiff asked the court to go ahead and enter a judgment for damages. On these facts, an appellate finding of waiver as a matter of law is especially troubling. The notice provided to defendant made it clear that the only relief plaintiff was seeking was an attachment, and that plaintiff itself recognized the limits of the court's authority to act beyond that on account of the mediation and arbitration agreements. Even a conscious decision not to participate in the litigation so defined would be a difficult foundation upon which to rest a conclusion that defendant waived the mediation and arbitration agreements.

¶ 41. The majority's real concern here — and it is a legitimate one — is the potential prejudice to plaintiff that would result if the trial court set aside the default judgment in this case. Given its concerns, the majority essentially makes findings about the prejudice to plaintiff without any evidence of the extent of the

fees and costs plaintiff incurred, of a change in plaintiff's position in reliance on the court's default judgment, of potential collateral consequences to the plaintiff of setting aside the judgment, or of the impact of the passage of five months between the default judgment and defendant's motion to reopen. The majority's concerns about finality and prejudice are well-founded, but for all the reasons noted above, its undertaking a waiver analysis not grounded in any trial court findings or exercise of discretion is not the best way to address its concerns. As the majority recognized in section I., in considering defendant's motion to set aside the default judgment, the trial court should have considered not only the nature of the defendant's neglect, but also *the degree of prejudice suffered by the plaintiff*, the presence of factual issues and evidence of meritorious defenses, the significance of the interests at stake, and the degree of defendant's culpability. *Ante*, ¶ 14. The degree of prejudice to the plaintiff is the *first* factor on this list.

¶ 42. On remand, the trial court could well conclude, based on competent evidence, that setting aside the default judgment would cause so much prejudice to plaintiff that the court will not set aside the judgment even if defendant's defenses based on the mediation and arbitration clauses are meritorious. As long as sufficient evidence and reasonable analysis supported the trial court's decision, I would affirm that ruling.

¶ 43. But the trial court could also conclude that the prejudice to plaintiff has been quite modest, or that it can be mitigated by sanctions against defendant in the form of fees; that defendant itself, rather than its counsel, has not been "culpably negligent" as we have described that concept in our cases; that the interests at stake are substantial; that having requested a stay on account of the mediation and arbitration agreements, plaintiff was estopped from abrogating its position on that point without additional notice to defendant; and that defendant's defenses are, in fact, meritorious. If those conclusions, or some combination of them, and a decision to set aside the default judgment were based on competent evidence and thoughtful analysis, I would affirm *that* ruling. My concern is that in an effort to save the trial court time and effort in the face of a record that the majority believes will necessarily lead to a decision to deny defendant's motion, the majority has muddled our law concerning waiver, enforcement of arbitration agreements, and the standards for setting aside a

default judgment. Because I do not believe that the outcome of a full analysis of the relevant factors, and the evidence supporting them, is a foregone conclusion on the basis of the record — or lack thereof — before us, and because I believe that the factors set forth by the majority in ¶ 14 of its opinion are sufficiently sensitive to guard against an unjust and inequitably prejudicial decision to set aside a default judgment, I would remand this case to the trial court for a decision on defendant's motion to set aside the default judgment that takes into account defendant's claimed defenses based on the mediation and arbitration agreement, the prejudice to plaintiff, and the various other factors identified in the majority's opinion.