VERMONT SUPERIOR COURT
Orange Unit
5 Court Street
Chelsea VT 05038
802-685-4610
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 172-10-17 Oecv



| U.S. Bank Trust, N.A. vs. Kelsey |
|---|

## ENTRY REGARDING MOTION

**Title:** Motion to Reconsider Defendant's Motion to Vacate Judgment (Motion: 20)
**Filer:** Grace B. Pazdan; Clare E Kelsey
**Filed Date:** September 10, 2025

The motion is DENIED.

The present matter before the Court is a limited question of whether a Defendant can obtain relief from a foreclosure judgment 10 months after the motion for judgment was granted and 30 days after the judicial sale has occurred.

The history of the present motion practice was summarized by the Court in its August 28, 2025 decision, but it is worth adding to this summary with the information Defendant Clare Kelsey has supplied in her motion to reconsider.

The present matter began in October 2017 when Plaintiff's predecessor, the Federal National Mortgage Association ("Fannie Mae"), filed a complaint for foreclosure based on Defendant's default on her payments. Defendant filed a timely answer, and the case was soon stayed and assigned to a foreclosure mediator. The mediation process terminated in December of 2019. In April 2019, the note and mortgage were transferred to the present Plaintiff, U.S. Bank, N.A., who was substituted as a party. Plaintiff filed its first motion for summary judgment in May 2019. Around the same time, Defendant sought to have her attorney withdraw from the case due to a lack of communication. This, and issues with Defendant's health, led to a series of hearings and successive motions by Defendant to enlarge her available time to respond to the pending motion. Each of these motions were granted in turn on June 20, 2019, October 1, 2019, and December 31, 2019 due primarily to her health issues. Defendant filed a fourth motion for an extension, but the emerging moratorium on evictions and foreclosures took effect prior to the ripening of this motion, and the case was stayed until the fall of 2021. At that time, Defendant sought a further extension, until February 26, 2022. The Court granted this extension, and Defendant subsequently filed her

opposition to the 2019 summary judgment motion. The Court denied the motion for summary judgment on March 21, 2022 based on what it found to be (1) defects in Plaintiff's motion under Rule 56(c)(1); and (2) taking Defendant's factual assertions in a light most favorable, the Court found a material dispute of fact concerning Plaintiff's possession of the true original note and whether the purported allonges were valid. *U.S. Bank Trust, N.A. v. Kelsey*, Docket No. 172-10-17 Oecv, at 1–2 (Mar. 21, 2022) (Tomasi, J.).[1]

The Court next held a status conference in April of 2022 to discuss discovery and VHAP status. Defendant indicated that she was interested in filing her own motion for summary judgment. The Court gave her 45 days, which would be followed by mediation. Defendant subsequently filed a motion for an extension and also filed a motion to reverse the order and conduct mediation before summary judgment. The Court granted these motions on November 1, 2022 allowing mediation to be conducted first followed by a motion for summary judgment 30 days after the mediation. This mediation was extended in January of 2023 and continued until October 2023 when the mediator reported the parties had reached an endpoint in the mediation without resolution. The Court scheduled a status conference, and Defendant filed a motion to continue on January 4, 2024 due to health issues. The Court granted this motion and moved any further hearings until after March 8, 2024.

In May 2024, Defendant sought to continue the May 21, 2024 hearing, but the Court denied this motion given the "lengthy continuances that have already occurred in this matter." The purpose of the hearing was to plan to move the foreclosure matter forward and schedule any necessary further hearings and a trial. Defendant filed a motion to reconsider the May 21, 2024 hearing based on her health condition and sought to delay it to after August 2024. While the Court

---

[1] Notwithstanding the Court's statements in its 2022 decision, the factual dispute about ownership of the note appears to revolve around the sufficiency of Plaintiff's paragraph 7 of its statement of undisputed material facts. That provision couches Fannie Mae's claim of ownership to the original Note in conditional language. Plaintiff claims the "original Note is in the possession and control of the Plaintiff, either directly or through its agent or the Plaintiff is otherwise entitled to enforce the mortgage note pursuant to the Uniform Commercial Code." Defendant contended, albeit on more legal than factual grounds, that Rule 80.1(b) requires a more definitive statement of ownership and that the conditional claim was insufficient. The Court agreed, but nowhere in Defendant's reply are there contradictory facts that would suggest ownership of the Note rested with another party or that there were affirmative facts showing ownership or possession in another. Defendant's motion simply focuses on the alleged deficiencies and shortcomings of Plaintiff's filing and show of proof, and the Court's decision rests entirely on these issues.

did not rule on the motion, the hearing was effectively cancelled and rescheduled for September 9, 2024.

Prior to this status conference, Plaintiff filed a second motion for summary judgment on July 30, 2024. This motion was the first dispositive motion in the case since 2019.[2] By the time of the September 9th status conference, Defendant had not filed a response to the pending motion. She requested, and the Court granted an extension for her to file an opposition/reply on or before October 9, 2025. Plaintiff asked for an equal amount of time to respond, and the Court granted this request, giving Plaintiff an enlarged period to file any replies.

Defendant did not file an opposition or reply in October 2024, and the Court took up the motion on November 15, 2024. The Court reviewed Plaintiff's filings, both the new motion for summary judgment, the first motion for summary judgment, and the original complaint, and issued a decision granting Plaintiff summary judgment on November 21, 2024 based on Plaintiff's undisputed statement of material facts. V.R.C.P. 56(c)(2) and (5) (obligating the non-moving party to respond to the moving party's statement of material facts and noting that the court need not consider materials outside those cited in the required statement of material facts); see also *Caldwell v. Champlain College, Inc.*, 2025 VT 17, ¶ 9 (permitting a court to rule in favor of the undisputed facts where not challenged).[3] Defendant did not file any response or motion to enlarge time to file, or any other objection to this decision.

_____

[2] Defendant contends in her affidavit and motion that Plaintiff had sought to file a second motion for summary judgment on two other occasions, once in April 21, 2022, and another time at a separate hearing, but they were told by the judges at the time, that they could not make such a filing. (Def. Aff. at ¶¶ 6, 7.) The Court has reviewed the April 21, 2022 hearing record and finds no evidence of such a ruling by the Court. There is nothing in this record that indicates that (1) Plaintiff sought to re-file its motion or (2) that the Court put any restrictions in place against Plaintiff from filing further motions in this case. In reviewing the record, the Court finds no indication of any restrictions on Plaintiff making any filings in this matter. Moreover, the March 21, 2022 ruling, as indicated above, is primarily focused on Plaintiff's shortcomings in its filings. While the Court indicated a factual dispute, the motion practice does not reveal any particular set of alternative facts or affidavits demonstrating a dispute that went beyond the sufficiency of Plaintiff's motion.

[3] In Plaintiff's second motion for summary judgment, it relied on the more definitive contention from the original complaint at paragraph 8 that Fannie Mae had "possession and control of the Note Mortgage, and Assignment" at the time of the complaint from which it derived the copy that was filed with the court. Since this assertion was not rebutted, the Court, as permitted by Rule 56(c)(5), concluded that these unrebutted statements of ownership were sufficient under Rule 80.1(c) (noting that the "complaint shall be treated as though supported by affidavit"). This was a different question than what the court was asked to review in 2022, and as this time, the Court did not find any disputed material facts that would either undermine the contention that Fannie Mae owned the note at the time the foreclosure commenced or that

On December 18, 2024, Plaintiff filed a proposed judgment and decree of foreclosure, which gave Defendant six months to redeem the property. Again, Defendant did not file any objections, motions to enlarge the time to reply, or any response with the Court. On June 20, 2025, Plaintiff sent Defendant notice that the redemption period had ended and that a judicial sale was scheduled for July 30, 2025. Again, Defendant did not file anything with the Court to stay the sale or proceedings or even request more time to raise issues.[4]

Defendant states in her affidavit that she "was unable in the summer or fall of 2024 to respond to Plaintiff's second summary judgment motion" because of complications related to her medical condition and medication regime. (Def. Aff. at ¶¶ 8, 9.) Defendant states this problem did not resolve until April 2025. Defendant states that she spent several months drafting a motion to vacate the November 2024 judgment and trying to consult with Vermont Legal Aid, but she did not file anything with the Court until after the judicial sale occurred. Even then Defendant did not mention either her illness or explain her delayed filings. It was not until September 10, 2025, over 45 days after the judicial sale, that Defendant, for the first time, raised any of her health issues or offered any explanation for the delays in filing.

Even with these more recent filings, Defendant's affidavit and filing still does not explain why, if she was in the middle of a debilitating medical situation, she agreed on September 9, 2024 to a 30-day window to file an opposition/reply to the pending motion for summary judgment or why she did not, at that time, raise any issue about her condition or the need for delay with the Court.[5] The history of this matter is replete with examples of Defendant taking precisely such steps, and Defendant has shown that she is both capable of filing for extensions and aware of the need for

---

U.S. Bank is the present holder and proper party to bring the present foreclosure action. *Bank of New York Mellon v. Quinn*, 2025 VT 60, ¶¶ 9 at n.3, 16 (affirming that ownership of and right to enforce the note is the key issue of standing for right to bring a foreclosure action).

[4] Throughout this case, the Court has regularly granted such requests, including permission for Defendant to file an opposition to the first motion for summary judgment nearly three years after the original motion.

[5] The exhibit to Defendant's affidavit, a letter from her treating physician, states that the Doctor had discussed her condition with her in July 2024, refused to prescribe her medication, and told her that she needed to take at least three months "to recover from all surgeries and ailments, particularly given the physical and mental stress of working on the legal case. . ." (Def. Aff. Ex. A.) Thus, Defendant knew her condition in September 2024 and had been advised by her physician not to engage in legal work. Yet, Defendant made none of this known to the Court, did not attempt to obtain a medical continuance, or indicate her limitations.

such. If Defendant was in a condition where she needed more time, the Court has shown a consistent willingness to provide extensions, but Defendant had an obligation to make such requests in a timely manner and to provide notice to the Court and to Plaintiff, who acted in reliance on the Court's order and Defendant's silence.

This is particularly puzzling even later in the case, given that Defendant by her own affidavit was in a medically better place as early as April 2025 and knew on June 20th that a judicial sale was scheduled in little over a month. Yet, she did not file anything with the Court or with Plaintiff to indicate her intent or seek relief. Instead, she allowed Plaintiff to proceed, incur the costs, and to sell the property.[6]

## **Motion for Relief from Judgment**

While the bulk of Defendant's motion to reconsider and obtain relief from judgment focuses on the procedural defects that she has since found in Plaintiff's original summary judgment motion, particularly issues with the certification of counsel, the Court must consider these arguments in conjunction with the factors on which Defendant has the burden pursuant to V.R.C.P. 60(b). *LaFrance Architect v. Point Five Development South Burlington, LLC*, 2013 VT 115, ¶ 11. While the Court must interpret the provisions of Rule 60(b) liberally to avoid hardship, it must balance any interest a party has in re-opening the process against the interest in finality. *Tudhope v. Riehle*, 167 Vt. 174, 178 (1997). In this respect, the Court gives substantial weight to the various timeframes and steps that it has outlined above where Defendant had the ability to seek relief or at least an extension prior to the successive steps in the foreclosure process. Similarly, the Vermont Supreme Court has noted "a strong legislative policy favoring the finality of foreclosure judgments." *TBF Financial, LLC v. Gregoire*, 2015 VT 36, ¶ 20.

Defendant contends that she is entitled to vacate the judgment in this matter pursuant to V.R.C.P. 60(b)(1), (3), and (6). These arguments invoke the standards for (1) excusable neglect; (3) fraud;[7] and (6) any other reason justifying relief from the operation of a judgment. The Court must

---

[6] Defendant makes the point in her motion that the sale resulted in the property being sold to Plaintiff as the highest bidder. This may have eliminated a further complication of involving a third-party buyer, but it did not alter the legal effect or the tax effect of such a sale on which Plaintiff has acted in reliance on the finality of the judgment and sale process. See 2 Law of Real Estate Financing § 12:96 (2025 update) (discussing the tax implications to a lender after a judicial foreclosure sale).

begin its analysis with the Rule 60(b) motion itself. *Olio v. Olio*, 2012 VT 44, ¶ 14. In doing so, the Court must look to each element, beginning with the excusable neglect and the merits of the defense cited by Defendant. *LaFrance Architect*, 2013 VT 115, ¶ 11. Taking each factor, the Court finds no basis to relieve Defendant from the judgment or to undo the judicial sale from July 30, 2025.

1. *Excusable Neglect.*

Even if the Court takes Defendants' affidavit at face value regarding her medical condition, there several gaps where she was capable of making a filing and did not. In particular, Defendant sought a 30-day extension from the Court in September of 2024 when she had been told by her medical care provider that should take it easy for several months and not engage in legal filings. In the spring of 2025, Defendant was, by her own admission able to respond, and was aware of the judgment pending and the quickly expiring redemption period. In neither instance did Defendant make even a minimal filing or request for further reconsideration. Similarly, there is little to explain why Defendant delayed filing any motions or notice until August of 2025. While Defendant is not a practicing attorney, she was once admitted to the bar, and the record in this case is replete with examples of Defendant being aware of the need for timely filings in support of her position or need for extensions. In this respect, the facts, even taken in a light most favorable to Defendant, do not support a finding of excusable neglect as the delay beyond the September 2024 representations and the delays in the spring and summer of 2025 are not explained or excused by Defendant's medical condition, and they are neither the result of mistake, nor inadvertence. *LaFrance Architect*, 2013 VT 115, at ¶ 11. As such, Defendant is not entitled to set aside the judgment under the excusable neglect standard of Rule 60(b)(1).

2. *Merits of Defendant's Defenses*

Turning to the merits of her arguments for relief, Defendant makes two arguments regarding Plaintiff's motion for summary judgment. In the first, she contends that the affidavit supporting

---

[7] While Defendant's motion purports to seek relief under V.R.C.P. 60(b)(3), there are no specific allegations of fraud. To the extent that the Court can discern any allegation of fraud, it appears to be a restatement of her affirmative defenses to the underlying motion for summary judgment, which focus on the sufficiency of the Plaintiff's affidavit under Rule 80.1(g)(2)(B) and the certification of counsel. While Defendant may argue that Plaintiff's motion was "sloppy" and "cut corners," there is no particular evidence of fraud in Plaintiff's filings. Defendant's motion does not cite any particular fraudulent activity that would have kept her from knowing that Plaintiff had filed a motion for summary judgment or suppressed some basis for which she refrained from acting in reliance.

Plaintiff's motion for summary judgment is insufficient as a matter of law because they lack specific citations as required under Rule 80.1(g)(2)(B)(i)–(iii). In the second, Defendant contends that Plaintiffs' certification of counsel was insufficient as a matter of law because it states that counsel "communicated by affidavit" rather than simply "communicated" as the form in Rule 80.1(g)(A) states.

Taking the issue of certification first, while Defendant has presented two entry orders from trial courts that have found a certification of counsel "by affidavit" to be insufficient, the question is whether such a filing is ultimately fatal to the judgment. While this is an important issue and Plaintiff's non-compliance with the plain language of Rule 80.1(g)(2)(A) is baffling, the Court must look to whether this issue presents a good and meritorious defense such that the Court has reason to reconsider the fundamental foundation of the earlier judgment. *Kotz v. Kotz*, 134 Vt. 36, 41 (1975).

In this case there are two factors that persuade the Court that the issue is not fatal to the Court's earlier issuance of judgment and do not present a good and meritorious issue. As a preliminary point, Plaintiff has supplemented the record by explaining that he did communicate directly with the affiant and worked with the affiant to craft the affidavit and ensure its veracity. These representations contained in Plaintiff's sur-reply demonstrate that Plaintiff's counsel engaged in the type of direct communication with the affiant that was intended by Rule 80.1(g)(2)(A), and it substantially complies with the conditions for certification of counsel. See V.R.C.P. 80.1, rptr. n. 2010 (noting that the certification is to ensure counsel communicates with their client's representative among other tasks). The second factor, as the Reporters' Notes to Rule 80.1(g)(2)(A) indicate, is that this provision is a specific application of counsel's Rule 11 obligations. Id. As such, the Court would be obligated in any case to review Plaintiff's substantive compliance with this provision, which under Rule 11(b) would require an examination of the lack of compliance and the nature of the non-compliance. From these findings, the Court would then have to determine the appropriate sanction, which could potentially range from allowing Plaintiff to supplement to complete denial. *Fox v. Fox*, 2022 VT 7, ¶¶ 33, 34. Thus, even if the Court had considered this issue at the time of judgment, it would have conducted further hearings, which is precisely what has occurred in this Rule 60(b) briefing. As noted above, the supplemental representations of counsel have effectively cured the certification issues raised in his original filing. Based on these factors, the Court finds no meritorious issue in this particular defense.

This brings the Court to the issues concerning the sufficiency of Karen Dunlap's affidavit. The Court has examined Ms. Dunlap's affidavit in light of Rule 80.1(g)(2)(B)'s requirements, and the

affidavit generally conforms to these requirements. First, Ms. Dunlap indicates her title and status of as an employee of a Plaintiff's servicing company, Fay Servicing, LLC, and as an authorized agent of Plaintiff. While there is no specific power of attorney document or corporate resolution attached to the affidavit, the facts of the affidavit indicate that Plaintiff is the holder of the note and mortgage and has employed Fay Servicing, LLC as the entity servicing the mortgage. This is relevant because the affidavit concerns the servicing of the mortgage, specifically what amounts have been paid or remain unpaid, along with other expenses, notices, and other details about Defendant's default and events leading up to the foreclosure. In paragraph 4 of her affidavit, Ms. Dunlap explains the nature of this relationship. She is an employee for the servicer who maintains and has all of the important records for Defendant's mortgage and acts for U.S. Bank. While U.S. Bank is the owner, Ms. Dunlap and her company are the agents who have been hired to keep and maintain the day-to-day records. The relationship between Ms. Dunlap, Plaintiff, and her employer are made out with sufficient evidentiary clarity for the Court. To the extent that a timely opposition could have sought additional clarity to these relationships, it is unclear what such additional challenges would bring at this juncture, and nothing inherent in the affidavit or the prior filings undermines this portion of the judgment.

Similarly, the other two provisions of Rule 80.1(g)(2)(B) are satisfied by the affidavit. These include a statement that Ms. Dunlap personally reviewed the records relating to affidavit and has personal knowledge of the facts (paragraph 12 of the affidavit). The affidavit and its attachment provide a description of the relevant records to understand the nature of the default and the terms of the foreclosure. Based on the Court's review and re-review of the affidavit, it cannot find a material issue that would undermine the November 2024 judgment. This is not to say that Defendant's issue are devoid of merit. They offer a thoughtful and sophisticated critique of Plaintiff's motion and point out certain "sloppiness" and "corner cutting," but they do not, either separately or collectively, undermine the weight and import of the affidavit. For these reasons, the Court finds that the present arguments are not sufficient to create a good and meritorious issue even if the Court was to re-visit the November 2024 judgment.

3.    *Final Equitable Concerns*

As the Court noted in its prior denial, Rule 60(b) relief is only available in extraordinary circumstances. *Penland v. Warren*, 2018 VT 70, ¶ 10. Defendant's most powerful argument is that she faces a substantial hardship with the loss of her home, which are only worsened by her age and

health issues.  The Court is not insensitive to these issues and concerns, and much of its review has been to familiarize itself with some of the minutia of the history of this 9-year-old case.

Against the immeasurable hardships, however, the Court is obligated to consider the rules of finality and the right of a Plaintiff to seek and obtain a final judgment.  In this case, Defendant has had multiple opportunities to make the merits of her case, including an extended period to file her own motion for summary judgment, and several months to oppose the July 2024 motion on which the foreclosure judgment is founded.  As noted above, Defendant's counsel did exceptional work to raise the limited issues on which her Rule 60(b) motion is premised, but the issues are not sufficient, and the lack of excusable neglect leave the Court with no compelling reasons to reopen or revisit the earlier judgments.  The defects in Plaintiffs' filings are largely minimal and have either been cured through counsel's subsequent representations or do not undermine the admissibility and testimony in Plaintiff's affidavit.

Finally, the Court finds compelling the fact that Defendant is not merely seeking to undo a judgment or decision, but she is effectively looking to turn the clock back a full year, undo the period of redemption and the judicial sale.  Such actions undermine the issue of finality and are not favored in foreclosure actions.  See, e.g., *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 300 (4th Cir. 2017) (denying a party's Rule 60(b) motion when they had failed to oppose the prior foreclosure and judgment motions); see also *TBF Financial, LLC*, 2015 VT 36, at ¶ 20 (noting that the legislative policy favors finality in foreclosures).

## ORDER

For the foregoing reasons and analysis, Defendant's motion to reconsider is **Denied.**  The final judgment and confirmation remain in effect in this case.

Electronically signed on 12/29/2025 1:23 PM pursuant to V.R.E.F. 9(d)

_____
Daniel P. Richardson
Superior Court Judge