2013 VT 115



LaFrance Architect d/b/a Lake
Architectural, LLC v. Point Five Development South Burlington, LLC (2012-203)

 

2013 VT 115

 

[Filed 20-Dec-13]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2013 VT 115
 
  


 No. 2012-203
 
  


 LaFrance Architect d/b/a Lake
 Architectural, LLC
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Superior Court, Chittenden
 Unit,
 
 
  
 
 
 Civil Division
 
 
  
 
 
  
 
 
 Point Five Development South
 Burlington, LLC
 
 
 January Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Geoffrey
 W. Crawford, J.
 
 
  
 
 Christina A. Jensen of Lisman Leckerling,
P.C., Burlington, for Plaintiff-Appellee. 

 

Thomas C. Nuovo and Nicole A. Killoran of Bauer, Gravel,
Farnham, Burlington, for

  Defendant-Appellant.

 

 

PRESENT:   Reiber, C.J., Skoglund, Burgess and
Robinson, JJ., and Bent, Supr. J., 

                    
Specially Assigned

 

 

¶ 1.           REIBER,
C.J.   Defendant appeals the trial court’s refusal to vacate a
default judgment against defendant.  We hold that the trial court
improperly declined to consider the strength of defendant’s proffered defenses
to the underlying action in reviewing defendant’s motion to vacate the default
judgment, but that defendant’s Rule 60(b) motion did not establish a prima
facie case to support a meritorious defense.  We therefore affirm the
trial court.

¶ 2.           This
dispute arose from a 2009 contract between plaintiff LaFrance Architect, d/b/a
Lake Architectural, and defendant Point Five Development South Burlington,
LLC.  Under this contract, plaintiff was to provide defendant
architectural services for the construction of a Walgreens in South Burlington. 
On January 31, 2011, plaintiff sent an invoice to defendant for services
rendered under the contract.  On March 4, two days after the invoice was
payable and three days after the store opened, defendant sent plaintiff a
letter indicating that defendant was terminating plaintiff’s services due to an
unspecified failure to fulfill the contract and unspecified “significant design
errors that caused additional costs.”  Plaintiff responded by filing
notice of a mechanics lien against defendant in the South Burlington Land
Records.  On March 30, defendant secured a bond to discharge the mechanics
lien, but failed to send a copy of the bond to plaintiff.   

¶ 3.           On
June 16, plaintiff commenced action to perfect its mechanics lien by filing in
superior court a verified complaint with a request for attachment as well as a
claim for damages.  Because the parties’ contract contained mandatory
mediation and arbitration provisions, plaintiff also filed a motion for stay,
requesting that the court consider its motion for attachment but then stay
proceedings pending mediation and arbitration as required by the
contract.    

¶ 4.           On
June 27, the Chittenden County sheriff’s office personally served defendant corporation’s registered agent with the summons,
complaint, motion for writ of attachment and related filings, the order setting
an attachment hearing on August 10, and a motion for stay.  Defendant’s
registered agent was away, but his law partner accepted service.[1]  The return of service was filed
with the court on July 1.   

¶ 5.           The
registered agent’s law partner promptly forwarded a copy of the complaint to
defendant’s New York attorney with a note flagging the August 10 attachment
hearing and a request to let her know if defendant needed assistance with the
matter.  Without reading the attachment, defendant’s New York attorney, in
turn, forwarded the message to an agent of defendant.  The agent
apparently inferred that the email related to the mechanics lien for which
defendant was bonding, and did not actually open the email attachments.[2]  Neither the New York attorney nor
the agent read the pleadings nor took any action to respond or follow up. 

¶ 6.           On
August 9—the day before the scheduled attachment hearing—plaintiff moved for
default judgment, continuance of the attachment hearing, and consolidation of
the attachment hearing with the damages hearing.  Plaintiff did not at
that time request that the court respond to its motion for a stay.  

¶ 7.           Because
defendant never answered or entered an appearance in the case, defendant
received no notice of plaintiff’s request for default judgment, the trial
court’s August 10 order entering default, or the hearing scheduled to take
evidence on damages.  After a hearing on the attachment and damages on
September 22, 2011, the trial court issued an order of approval for an
attachment in the amount of $69,024.90.  On September 30, the court issued
a final judgment order awarding plaintiff a judgment of $69,024.90 against
defendant, in addition to interest and costs.  Defendant did not
participate in the hearing or receive notice of the attachment and judgment
order.

¶ 8.           Only
after plaintiff commenced an action in New York to domesticate the Vermont
judgment did defendant respond by filing a motion in the trial court here.
 On March 9, 2012, defendant moved for relief from judgment pursuant to
Vermont Rules of Civil Procedure 55 and 60.  Defendant requested relief
“on the grounds of mistake, inadvertence, excusable neglect and the Plaintiff’s
failure to follow the compulsory Mediation and Arbitration provisions of the
contract.”  The court denied this motion, concluding that this type of
“law office error” does not qualify as an excusable “mistake” under Rule 60(b),
and explicitly refused to consider any of the defenses on the merits offered by
defendant.  Defendant appeals.

I.

¶ 9.           “A
motion for relief from judgment brought under [Rule] 60(b)(2) is addressed to
the sound discretion of the trial court, and its ruling will not ordinarily be
disturbed unless it clearly appears from the record that such discretion was
withheld or abused.”  Desjarlais v. Gilman, 143
Vt. 154, 157, 463 A.2d 234, 236 (1983).[3]  In evaluating motions for relief
from judgment in the context of default judgments, we have recognized that “[a]
judgment by default effectively deprives a defendant of an opportunity to have
the merits . . . determined
through the normal adversary judicial process.”  Id. 
Therefore, we noted the general presumption in favor of “resolving litigation
on the merits, to the end that fairness and justice are served.”  Id.
 On the other side of the scale, however, are the justice system’s
interests in efficiency and finality of judgments, interests which motivate the
rigidity of Rule 60(b).  See John A. Russell Corp. v. Bohlig, 170
Vt. 12, 24, 739 A.2d 1212, 1222 (1999) (“[Rule 60] is
not an open invitation to reconsider matters concluded at trial, but should be
applied only in extraordinary circumstances” (quotation omitted)); Kennerly
v. Aro, Inc., 447 F. Supp. 1083, 1087 (E.D. Tenn. 1977) (“[I]t is not the
purpose of this Court . . . to subvert the plain provisions of
[the analogous federal Rule 60] by such liberality and contributing to its
becoming meaningless; it is to be construed . . . ‘to
secure the just, speedy, and inexpensive determination of every
action.’ ” (quoting F.R.C.P. 1)). 

¶
10.      
Beyond preserving efficiency and finality, Rule 60(b) respects the
discretion of the trial court and the need for flexibility to manage its own
docket.  See Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 368 (2d Cir. 2003) (“[T]he legal system would groan under the weight of a regimen
of uncertainty in which time limitations were not rigorously enforced¾where
every missed deadline was the occasion for the embarkation on extensive trial
and appellate litigation to determine the equities of enforcing [the time]
bar.”).  This consideration is especially compelling in civil cases
with sophisticated parties represented by knowledgeable counsel, such as the
case here.  See In re Town of Killington, 2003 VT 87A, ¶ 17,
176 Vt. 60, 838 A.2d 98 (taking an “appropriately
hard line when it comes to determining when neglect that stems from factors
totally within the control of a party or its attorney is ‘excusable,’ ”
where neglect stemmed from an “internal [law] office procedure breakdown”
(quotation omitted)); see also United States v. Hooper, 43 F.3d
26, 28-29 (2d Cir. 1994) (affirming denial of a
filing extension where delay resulted from legal assistant’s ignorance of the
rules); cf. Courtyard Partners v. Tanner, 157 Vt. 638, 639, 595
A.2d 287, 288 (1989) (lifting a default judgment where defendants’ position on
the merits was strong and defendants were unrepresented).  

¶ 11.       In Desjarlais,
we urged the trial court to consider the following factors when conducting the
Rule 60(b) analysis: “whether the failure to answer was the result of mistake
or inadvertence, whether the neglect was excusable under the circumstances, and
whether the defendant has demonstrated any good or meritorious defense to the
plaintiff’s claims.”  143 Vt. at 157, 163 A.2d at 237. 
With respect to the “excusable neglect” factor, courts should be particularly
circumspect “when the initial fault, at least, appears to be that of a
defendant’s attorney.”  Id.  Concerning the “meritorious
defenses” factor, the trial court should give substantial weight to a
meritorious defense when determining whether to vacate a default
judgment.  See Courtyard Partners, 157 Vt. at 639, 595 A.2d at 288 (“Although the trial court should first consider
the degree of defendants’ negligence in failing to appear, even a willful
default may be excused if defendants’ position on the merits is so strong that
it would be unjust to affirm the judgment.”).  

¶ 12.       In Courtyard
Partners, we reversed the trial court’s denial of a tenant’s motion to set
aside a default-like judgment in favor of a landlord because “defendants’
defenses, as presented to this Court, appear to be strong, defendants’
negligence was not culpable, defendants were unrepresented, and the motion was
made promptly, within the appeal period.”  Id. 
In Desjarlais, we affirmed the trial court’s denial of a motion
to set aside a default judgment where defense counsel had failed to file an
answer.  Defendants themselves argued that they were chargeable with
neglect for failing to follow up on the status of their case for many months,
and that their claims of meritorious defenses consisted of mere conclusory
allegations.  143 Vt. at 158, 463 A.2d at 237. 


¶ 13.       In this case,
defendant asserted in its motion for relief from judgment that it “has good and
meritorious defenses to the Plaintiff’s claim,” arising from a notice issue and
the mediation clause.  Defendant also referenced its proposed answer,
affirmative defenses, and verified counterclaim, which included failure to
state a claim upon which relief can be granted, set off, and plaintiff’s
noncompliance with the arbitration and mediation provisions of the contract as
affirmative defenses.    

¶ 14.       In light of its
conclusion that an internal law office failure like that claimed here did not
amount to excusable neglect, the trial court declined to exercise its
discretion to consider defendant’s claimed defenses, stating: “Defendant may
well have had defenses, including contract provisions requiring mediation, to
the suit.  These are lost when default is entered.”  The court relied
on a decision in which we concluded that an internal law office breakdown did
not constitute “excusable neglect” warranting extension of a hard and fast
appeal deadline.  See Town of Killington, 2003 VT
87A, ¶ 19.  However, our opinion in Town of Killington,
and the four-factor test articulated in that decision for evaluating a claim of
excusable neglect in the context of a failure to timely appeal, did not address
the specific circumstances of a default judgment.  As noted above, we have
held that our Rule 60(b) analysis in the context of a Rule 55(c) motion to set
aside a default judgment requires consideration of a different set of factors
than the ordinary Rule 60(b) analysis.  Supra, ¶¶ 11-12.
 By expressly disregarding whether defendant had
meritorious defenses, the trial court departed from the proper framework for
evaluating motions to set aside default judgments and declined to consider a critical
factor in the overall analysis.

¶ 15.       We take no issue
with the trial court’s conclusion that the neglect alleged here does not rise
to the level of “excusable neglect” that would ordinarily warrant setting aside
a non-default judgment.  See Town of Killington, 2003 VT 87A,
¶¶ 16-17.  The failure to open a critical e-mail, whether by counsel
or the client, is not the kind of neglect we have ever characterized as
“excusable.”  However, because the judgment in question here was a default
judgment, the trial court should also have considered: (1) the degree of
prejudice suffered by the plaintiff as a result of defendant’s delay in
answering; (2) the presence of material issues of fact and prima facie evidence
of meritorious defenses; (3) the significance of the interests at stake; and
(4) the degree of defendant’s culpability.  See, e.g., Courtyard
Partners, 157 Vt. at 639, 595 A.2d at 288 (setting aside default judgment
where tenant defendant’s negligence was not “culpable”); Parsons v. Consol.
Gas Supply Corp., 256 S.E.2d 758, 762 (W. Va. 1979) (identifying first
three of four factors listed above); Camping World, Inc. v. McCurdy, 111
So. 3d 738, 740-41 (Ala. Civ. App. 2012) (trial court’s discretionary authority
to set aside default judgments should not be exercised without consideration of
“(1) whether the defendant has a meritorious defense; (2) whether the plaintiff
will be unfairly prejudiced if the default judgment is set aside; and (3)
whether the default judgment was a result of the defendant’s own culpable
conduct”); cf. Desjarlais, 143 Vt. at 158 (affirming refusal to set
aside default judgment where defendants themselves were negligent in
responding).  Because the trial court failed to consider these factors, we
conclude there was error.

II.

¶ 16.       Although we
conclude that the trial court erroneously failed to consider potential
meritorious defenses to plaintiff’s claims, we need not remand this case for
further proceedings if we conclude as a matter of law that defendant’s Rule 60
motion did not raise any meritorious defenses.  Accordingly, we consider
the two “meritorious defenses” urged by defendant.  

A.

¶ 17.       One of the
“meritorious defenses” defendant raised in its verified counterclaim and again
on appeal is based on alleged deficiencies in the services provided by
plaintiff.  We have not decided whether a counterclaim or set off
constitutes a “meritorious defense” for the purpose of a motion to set aside a
default judgment.  

¶ 18.       We previously
considered the res judicata effect of a default judgment where the defaulting
party did not raise a compulsory counterclaim.  We held that “courts have
given default judgments full effect and . . . a
compulsory counterclaim omitted from an action that terminates in a default
judgment will be barred from any subsequent suits.”  Pomfret Farms Ltd.
P’ship v. Pomfret Assocs., 174 Vt. 280, 286, 811 A.2d 655, 661 (2002)
(quotation omitted); see also Letourneau v. Hickey, 174 Vt. 481, 483,
807 A.2d 437, 440 (2002) (mem.) (quotation
omitted).  Given that compulsory counterclaims are conclusively
adjudicated by a default judgment, we conclude that a counterclaim arising from
the same transaction as the underlying complaint, such that a judgment in the
action would be res judicata as to that counterclaim, can constitute a
“meritorious defense.”  

¶ 19.       The question,
then, is whether defendant’s verified counterclaim was compulsory.  Rule
13(a) provides:

A
pleading in an action . . . shall state as a counterclaim
any claim which at the time of serving the pleading the pleader has against any
opposing party, if it arises out of the transaction or occurrence that is the
subject matter of the opposing party’s claim . . . .[4]  

 

In this
case, defendant’s counterclaim—for deficiencies in performance of the
contract—is logically related to plaintiff’s claim for nonpayment.  See Stratton
v. Steele, 144 Vt. 31, 35, 472 A.2d 1237, 1239 (1984) (stating that counterclaim has logical relationship to
original claim if it arises from same aggregate of operative facts). 
Thus, we conclude that a counterclaim in the nature of defendant’s counterclaim
here, asserting set off on the ground of plaintiff’s deficient performance,
could constitute a meritorious counterclaim supporting a decision to set aside
a default judgment.

¶ 20.       The next question is whether defendant’s pleadings support
its “meritorious defense” claim on this point.  “It is incumbent
upon a party seeking relief from a judgment not only to meet the requirements
of [Rule] 60(b), but also to show, plead or present evidence of facts which, if
established, would constitute a meritorious defense to the action.  This
policy recognizes that it would be an idle exercise and a waste of judicial
resources for a court to set aside a judgment if, in fact, there is no genuine
justiciable controversy.”  Maynard v. Nguyen, 274
P.3d 589, 591 (Idaho 2011) (quotation omitted).  Where facts are in
issue, an evidentiary hearing should precede a decision on the motion, unless
the court finds that the motion is totally lacking in merit.  Manosh v. Manosh, 160 Vt. 634, 635, 648 A.2d 833, 835
(1993).  However, the grounds for the motion must be pled with
sufficient particularity to warrant a hearing and potential relief.  See Fed.
Home Loan Mortg. Corp. v. De Souza, 85 So. 3d 1125, 1126 (Fla. Dist. Ct. App. 2012) (a defendant seeking
relief from judgment based on fraud must raise a prima facie case of fraud, and
“must specify the fraud with particularity”). 

¶ 21.       In this case, defendant’s Rule 60(b) motion does not
include detailed allegations to support its general assertion of meritorious
defenses and counterclaims based on plaintiff’s performance; instead, defendant
cites to its contemporaneously filed answer and verified counterclaim in
support of its “meritorious defenses” argument.  That answer and
counterclaim, in turn, assert without any specificity that plaintiff had made
design errors and errors related to the demolition, site, roof and building for
the project, causing defendant to incur significant additional costs and
expense.  Defendant’s motion does not identify any specific errors, and
does not recite any specific facts supporting its ultimate allegation that
plaintiff made errors.  Defendant’s counterclaim may be sufficiently
specific to satisfy the broad requirements of notice pleading under Rule 8(a),
but is not detailed enough to satisfy the more exacting standards of a motion
to set aside a judgment under Rule 60(b).  See V.R.C.P. 8(a), Reporter’s
Note (“[T]he rules do not require a specific and detailed statement of the
facts which constitute a cause of action, but simply a statement clear enough
to give the defendant fair notice of what the plaintiff’s claim is and the
grounds on which it rests.” (quotation and citations
omitted)).  Accordingly, we conclude that
defendant’s Rule 60(b) motion did not plead a prima facie case of a meritorious
defense arising from plaintiff’s allegedly deficient performance with
sufficient particularity to warrant remand for the trial court’s consideration.

B.

¶
22.      
Defendant also points to the mandatory mediation and arbitration clauses
in the contract between the parties as a defense to the trial court’s judgment.
 Given defendant’s delay in asserting its arbitration rights, however, we
hold that defendant’s conduct amounted to an implicit waiver and thus does not
constitute a meritorious defense for purposes of Rule 60(b).  Therefore,
it is unnecessary to remand the case to the trial court, since defendant has no
meritorious defenses and cannot prevail under Rule 60(b) as a matter of law. 

¶
23.      
The competing interests underlying Rule 60, supra ¶¶ 9-10,
are further complicated in this case by the general policy favoring
arbitration, as articulated in the Vermont Arbitration Act, see 12 V.S.A.
§ 5652(a) (providing that a written arbitration agreement “creates a duty
to arbitrate, and is valid, enforceable, and irrevocable”), and in Vermont case
law.  Lamell Lumber Corp. v. Newstress Int’l, Inc., 2007 VT 83,
¶ 9, 82 Vt. 282, 938 A.2d 1215 (“Vermont law and public policy strongly
favor arbitration as an alternative to litigation for the efficient resolution
of disputes.” (quotation omitted)).  The
presumption in favor of arbitration, however, must be viewed within the context
of its underlying purpose: to provide speedy, cost-effective resolution of
disputes.  Id. ¶ 9.  To allow a
party to “cr[y] arbitration” in order to undo the consequences of its own
errors would turn the rationale of arbitration on its head.  Menorah
Ins. Co., Ltd. v. INX Reins. Corp., 72 F.3d 218, 223 (1st Cir. 1995) (quotation
omitted).  In John Wiley & Sons, Inc. v.
Livingston, the U.S. Supreme Court recognized the danger in allowing
parties to use arbitration clauses as part of an elaborate feet-dragging
exercise.  376 U.S. 543, 558 (1964). 
Although it ultimately upheld the arbitration requirement in that case, the
Court declined to adopt a distinction between substantive and procedural issues
for the purpose of determining arbitrability, because it would create
“opportunities for deliberate delay and the possibility of well-intentioned but
no less serious delay . . . to the
disadvantage of the parties.”  Id. 

¶
24.      
Other courts have stringently enforced the doctrine of waiver using
reasoning similar to Wiley¾to
prevent parties from asserting arbitration as a cover for their own mistakes or
tactical errors.  See, e.g., Gen. Star Nat’l Ins. Co
v. Administratia Asigurarilor de Stat, 289 F.3d 434, 438 (6th Cir. 2002); Menorah,
72 F.3d at 223; Austin Energy, LLC v. Ecolumens, LLC, No. CV
11-5749, 2012 WL 3929956, at *1 (E.D.N.Y. Aug. 13, 2012).  Further, we
have recognized that the doctrine of waiver “ensure[s] that [arbitration]
remains an effective alternative dispute mechanism rather than another
expensive and time consuming layer to the already complex litigation
process.”  Union Sch. Dist. No. 45 v. Wright & Morrissey, Inc.,
2007 VT 129, ¶ 9, 183 Vt. 555, 945 A.2d 348 (quoting Joder Bldg. Corp. v.
Lewis, 153 Vt. 115, 120, 569 A.2d 471, 473 (1989)). 

¶
25.      
Given the policy considerations behind Rule 60(b) and alternative
dispute resolution, we hold that defendant has waived its right to arbitrate
and thus cannot assert any meritorious defenses as a matter of law.  For
purposes of Rule 60(b), “[i]t is incumbent upon a party . . .
to show, plead or present evidence of facts” to show the meritorious defense,
in this case, that defendant was entitled to arbitration.  Maynard, 274 P.3d at 591 (quotation omitted). 
Although waiver is generally a factual issue for the trial court, an appellate
court can nevertheless decide that, as a matter of law, it would be “a waste of
judicial resources for a court to set aside [the] judgment” because “there is
no genuine justiciable controversy.”  Id.  

¶
26.      
In determining whether there was waiver, several factors should be
considered, including: the timing of the request, the extent that the party
seeking arbitration has participated in litigation, and “whether the party
opposing arbitration has suffered prejudice through the incursion of litigation
time, costs, and expenses.”  Lamell, 2007 VT 83, ¶
 11.  This inquiry must take into account the “entire course
of conduct” of the moving party.  Menorah, 72
F.3d at 221.   

¶
27.      
Defendant argues that because its delay was inadvertent, it has not
waived its arbitration rights.  Although this inadvertence conclusively
demonstrates that there was no explicit waiver, which requires that an offer to
arbitrate be “expressly declined,” id., it does not foreclose a finding
of implicit waiver.  To the contrary, the existence of the multi-factor
test articulated in Lamell implies that, even in the absence of a
defendant’s participation in litigation, a delay in filing alone may
constitute waiver if prejudice to the party not seeking arbitration can also be
shown.  2007 VT 83, ¶ 11 (describing the factors involved in waiver);
see also Gen. Star., 289 F.3d at 438 (“[A]
party may waive [its] right [to arbitration] by delaying its assertion to such
an extent that the opposing party incurs actual prejudice.”); cf. Morrissey,
2007 VT 129, ¶ 12 (rejecting waiver based on delay because there was no
prejudice).      

¶
28.      
Here, there was both delay and prejudice.  Defendant was given
ample notice of plaintiff’s interests and intent to sue in this case. 
Plaintiff filed a mechanic’s lien in the South Burlington Land Records on March
8, 2011, and a superseding Notice of Mechanic’s Lien on June 11, 2011.
 Defendant, in fact, secured a bond to discharge the mechanic’s lien, but
never sent a copy of the bond to plaintiff.  In order to perfect its lien,
plaintiff commenced the current action on June 16, 2011 in superior
court.  Defendant’s registered agent was personally served with the
summons, complaint, motion for writ of attachment and
related filings, the order setting an attachment hearing on August 10, and a
motion for stay.  Because the registered agent was out of town, his law
partner accepted service and promptly forwarded a copy of the pleadings to
defendant’s New York attorney, who then forwarded the message and attachment to
the Point Five attorney.  The email had the subject line “Point Five law
suit,” and stated the following:  “[A]ttached is a copy of the pleadings
served this afternoon.  [Defendant’s registered agent] is away until next
Wed so I took service.  A hearing is set for August 2010.  Let me
know if your client needs assistance so we can plan accordingly.”   

¶
29.      
Defendant does not contest that it was properly served with the summons
and complaint in this case.  Yet, inexplicably, defendant did not open the
attachment or respond in any way.  Defendant continued to do nothing while
the superior court held an evidentiary hearing on September 22, 2011 and issued
a writ of attachment and final judgment on September 30, 2011.  In fact,
defendant did not respond at all until March 9, 2012, after plaintiff commenced
an action to domesticate the judgment in New York.  Despite the ongoing
litigation, defendant waited more than nine months after being properly served
before participating.  Unlike in Courtyard Partners, where this
Court found the rationale behind Rule 60(b) to be less compelling because the
defendant was unrepresented, 157 Vt. at 639, 595 A.2d at 288, here defendant
was amply represented: it received notice of the commencement of this action
from a Vermont attorney, through its New York attorney, to its principal, yet
another attorney.  

¶
30.      
As a result of this delay, plaintiff suffered prejudice in the form of
“litigation time, costs and expenses.”  Lamell,
2007 VT 83, ¶ 11.  Although there is no per se rule regarding the
length of delay needed to show prejudice, a delay that forces the other party
to conduct substantial litigation can contribute to a finding of
prejudice.  Menorah, 72 F.3d at 222 (finding implicit waiver where the defendant waited over a year to invoke arbitration, and
the plaintiff incurred litigation expenses as direct result of defendant’s
behavior); see also Gen. Star, 289 F.3d at 438 (finding waiver
where the defendant did not assert its arbitration rights until after the
plaintiff had incurred costs of pursuing default judgment).  Here, plaintiff was forced to
pursue default judgment and to commence action to domesticate the judgment in
New York before defendant mustered a response.  

¶
31.      
Given these considerations, we hold that defendant implicitly waived its
right to arbitrate, and thus the arbitration clause does not constitute a
meritorious defense.

Affirmed.

 


            
 
 
 
  
 
 
 FOR THE
 COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Chief Justice
 
  

¶ 32.       ROBINSON, J., concurring in part, dissenting in part.  
I have no particular objection to an ultimate outcome that keeps the trial
court’s default judgment in place, but I believe the path the majority takes to
that result widens a narrow exception to the enforceability of mandatory
arbitration clauses, undermining this Court’s express preference for enforcing
arbitration clauses; strays from our general approach to waiver; undoes the
requirement that a court at least consider the merits of a defendant’s defenses
as one of a number of factors to be considered in connection with a motion to
set aside a default judgment; and extends the concept of waiver to a factual
setting where it does not readily apply.  For these reasons, I
respectfully dissent from section II.B of the majority’s opinion, relating to
the question of whether we should remand this case to the trial court for
consideration of the requisite factors, including the prejudice to plaintiff of
setting aside the default judgment, the nature of defendant’s neglect, and the
strength of defendant’s defense based on the mandatory mediation and
arbitration clauses in the contract between the parties.[5]

¶ 33.       I note at the
outset that the majority’s opinion cannot be described in terms of deference to
the trial court’s wide discretion in connection with motions to set aside
judgments.  See ante, ¶ 23.  As the majority rightly
concludes as a matter of law, the trial court applied the wrong test in this
case, using the general standard we have applied in most Rule 60(b) cases, and
failing to consider the various specific factors applicable when a party seeks
to set aside a default judgment.  See ante, ¶ 14.  The
trial court decided this case, understandably but incorrectly, on the narrow
ground that failure to open a critical email by counsel is not the sort of
conduct that ordinarily amounts to “excusable neglect.”  It did not
purport to analyze the prejudice to plaintiff that would arise from setting
aside its judgment, and did not conclude that defendant had waived its defenses
of mandatory mediation or arbitration by virtue of the passage of time since it
was served, or since the default judgment.  The majority’s rationale for
affirming the trial court’s ultimate decision on defendant’s motion originated
in this Court, and does not reflect any deference at all to a particular
finding of fact or exercise of discretion by the trial court.

¶ 34.       This Court has
previously emphasized that “Vermont law and public policy strongly favor
arbitration as an alternative to litigation for the efficient resolution of
disputes.”  Lamell Lumber Corp. v. Newstress Int’l, Inc., 2007 VT
83, ¶ 9, 182 Vt. 282, 938 A.2d 1215.  In Lamell,
a lumber wholesaler and retailer sued the manufacturer of a kiln for breach of
contract.  The defendant listed the arbitration agreement as an affirmative
defense in its answer, but then proceeded to actively litigate the case over
the next two years, participating in extensive discovery and filing motions
with the court.  Id. ¶ 4.  One
month before trial, the defendant filed a summary judgment motion seeking
dismissal of the case on the ground that an arbitration agreement deprived the
court of jurisdiction to hear the case.  Id.  The trial court
concluded that the defendant had waived the arbitration agreement, and this
Court affirmed.  On appeal, this Court rejected the defendant’s argument
that an arbitration agreement is jurisdictional and therefore cannot be
waived.  This Court explained:

The
waiver issue is generally held to be a question of fact to be resolved under
the circumstances of each case, considering such factors as the timing of the
request for arbitration, the extent to which the party seeking arbitration has
participated in the judicial process, and whether the party opposing
arbitration has suffered prejudice through the incursion of litigation time,
costs, and expenses.

 

Id.
¶ 11.  Although the Court did not consider whether the trial
court abused its discretion in making the waiver determination, as the issue
had not been raised, the above factors all supported the trial court’s waiver
determination.  The defendant had actively participated in the judicial
process for over two years, the parties had conducted extensive discovery
including depositions, and the defendant had invoked the arbitration agreement
at the eleventh hour, on the eve of trial.  In Lamell, the
factfinder concluded that the defendant had waived the agreement after two
years of active participation in the judicial process.  

¶ 35.       Two significant
factors distinguish this case from Lamell and the others relied upon by
the majority in support of its waiver argument.  First, as in Lamell,
in the cases cited by the majority, the party deemed to have waived an
arbitration agreement undertook some choice or act or course of conduct that
reflected a rejection of arbitration or acquiescence to and acceptance of
litigation in court as the means to resolve their dispute.  For example,
in Menorah Ins. Co., Ltd. v. INX Reinsurance Corp., 72 F.3d 218, 221
(1st Cir. 1995), a party expressly declined a request to arbitrate an
international contract dispute.  Subsequently, that party was served and
chose not to appear in a court proceeding concerning that dispute.  Id. at 221-22.  It did not invoke the
arbitration agreement (the very agreement it had expressly declined to honor)
until the plaintiff had gone through all the necessary steps to secure a
judgment in court and then sought to enforce its default judgment in that
lawsuit—more than a year after the party was served in that case.  Given
this course of conduct, as well as the trial court’s express finding of
prejudice to the plaintiff, the U.S. Court of Appeals for the First Circuit
affirmed the trial court’s conclusion that the party had waived the arbitration
agreement.  Id.  Significantly, the First Circuit declined to
adopt a per se rule that a one-year delay is or is not sufficient to support
waiver, noting that delay alone is not automatically a source of
prejudice.  Id.[6] 


¶ 36.       Likewise, in Austin
Energy, LLC v. Ecolumens, LLC, a defendant
demanded arbitration and then, after appearing before the American Arbitration
Association, did not participate in further arbitration proceedings.  No.
CV 11-5749, 2012 WL 3929956, at *1 (E.D.N.Y. Aug. 13, 2012).  When the
arbitration was suspended and the plaintiff filed suit in court for damages,
the defendant did not raise the arbitration agreement but instead opted to
default.  Id.  On these facts, the court concluded that the
defendant had waived the arbitration agreement.  Id.; see also Gen.
Star Nat’l Ins., 289 F.3d at 438 (involving defendant who waited for
seventeen months after actual notice of the lawsuit, while the plaintiff
pursued remedy in court and incurred associated costs, before invoking
arbitration agreement after entry of default judgment against defendant). 
In none of the cases cited by the majority was there any indication that a
defendant’s default resulted from neglect rather than a conscious decision to
allow a default judgment, and in most of the cases, the defendant actively
participated in court proceedings or affirmatively declined to participate in
arbitration.

¶ 37.       The second major
difference between this case and those cited by the majority is that this is
the only case in which an appeals court seeks to make a finding of prejudice
and a conclusion of waiver in the first instance.  See,
e.g., Menorah, 72 F.3d at 221 (expressly relying on trial court’s
finding of prejudice).     

¶ 38.       Not only is the
majority’s opinion out of step with case law concerning waivers of arbitration
agreements, but it is not consistent with our case law concerning waiver more
generally.  We have held that waiver of a contract right is “the
intentional relinquishment or abandonment of a known right,” and have
recognized that “the act of waiver may be evidenced by express words as well as
by conduct.”  Toys, Inc. v. F.M. Burlington, Co., 155 Vt. 44, 51,
582 A.2d 123, 127 (1990) (citing Lynda Lee Fashions, Inc. v. Sharp Offset
Printing, Inc., 134 Vt. 167, 170, 352 A.2d 676, 677 (1976)).  Waiver
“involves both knowledge and intent on the part of the waiving party.”  Id. 
We have also recognized that the question of waiver is generally one for a
factfinder.  See, e.g., id. at 52 (“[T]he basic facts are clear but the inferences to be
drawn from the facts and the intentions and purposes of the plaintiff are not
clear.  A factfinder could find a waiver based on this
record, but that conclusion is not commanded as a matter of law.”); see also Lamell,
2007 VT 83, ¶ 11 (waiver usually a question of fact to be resolved
considering a list of factors).  In this case, the majority
essentially holds that an eight-and-one-half-month delay in invoking an
arbitration agreement amounts to a waiver of that agreement, as a matter of
law, without the need for evidence or factfinding concerning prejudice,
without consideration of the reason for the failure to invoke the arbitration
agreement, and without regard to a party’s knowledge or intent in connection with
the purported waiver.  I respectfully suggest that in so holding, the
majority has established a new test for waiver that is disconnected from the
factors normally defining waiver, has stepped into the trial court’s role as
factfinder, and has done so in a context—enforcement of arbitration
agreements—in which we should be particularly wary of expanding the concept of
waiver beyond its traditional contours.  

¶ 39.       The majority’s
invocation of waiver here is particularly puzzling because the majority
explicitly holds that in reviewing a motion to set aside a default judgment, a
trial court should consider, among other things, whether a party has
meritorious defenses.  See ante, ¶ 14.  By definition, a
party who has been subjected to a default judgment has not raised his or
her defenses; that is the essence of a default judgment.  But if the
failure to enter an appearance and raise one’s defenses, including mandatory
arbitration and mediation, amounts to a waiver of those defenses, then what
sense does it make to say that a court reviewing a motion to set aside a
default judgment should consider whether the movant has meritorious
defenses?  The Court’s holding seems to be that a court considering a
motion to set aside a default judgment should consider, among other factors,
defendant’s meritorious defenses, except that if defendant has failed to enter
an appearance and suffers a default judgment without raising those defenses,
they are waived.  The majority’s analysis in section II.B swallows up its
holding in section I.  

¶ 40.        Moreover,
in this particular case, even if there had been evidence that defendant had
knowingly and intentionally avoided the trial court’s proceedings after
plaintiff served defendant, it would be difficult to infer waiver of the
mediation and arbitration agreements as a matter of law.  The documents
served upon defendants, though not read by them due to neglect, included a
motion to stay in which the plaintiff expressly acknowledged the existence of
the mediation and arbitration agreements and requested a stay to allow the
parties to mediate or arbitrate.  The plaintiff explained that the court
was authorized to take only the limited action of approving an attachment to
secure a potential judgment in plaintiff’s favor, but recognized that the
court’s authority to act in the case was limited to the attachment.  On
the eve of the attachment hearing, without any acknowledgment to the court of
its prior motion for a stay, without any acknowledgment to the court of the mediation
and arbitration agreements, and without notice to defendant, which had no
legally-protected right to notice because it had not entered an appearance,
plaintiff asked the court to go ahead and enter a judgment for damages. 
On these facts, an appellate finding of waiver as a matter of law is especially
troubling.  The notice provided to defendants made it clear that the only
relief plaintiff was seeking was an attachment, and that plaintiffs themselves
recognized the limits of the court’s authority to act beyond that on account of
the mediation and arbitration agreements.  Even a conscious decision not
to participate in the litigation so defined would be a difficult foundation
upon which to rest a conclusion that defendant waived the mediation and arbitration
agreements.

¶ 41.       The majority’s
real concern here—and it is a legitimate one—is the potential prejudice to
plaintiff that would result if the trial court set aside the default judgment
in this case.  Given its concerns, the majority essentially makes findings
about the prejudice to plaintiff without any evidence of the extent of the fees
and costs plaintiff incurred, of a change in plaintiff’s position in reliance
on the court’s default judgment, of potential collateral consequences to the
plaintiff of setting aside the judgment, or of the impact of the passage of
five months between the default judgment and defendant’s motion to
reopen.  The majority’s concerns about finality and prejudice are
well-founded, but for all the reasons noted above, its
undertaking a waiver analysis not grounded in any trial court findings or
exercise of discretion is not the best way to address its concerns.  As
the majority recognized in section I, in considering defendant’s motion to set
aside the default judgment, the trial court should have considered not only the
nature of the defendant’s neglect, but also the degree of prejudice suffered
by the plaintiff, the presence of factual issues and evidence of
meritorious defenses, the significance of the interests at stake, and the
degree of defendant’s culpability.  Ante,
¶ 14.  The degree of prejudice to the plaintiff is the first
factor on this list.

¶ 42.       On remand, the
trial court could well conclude, based on competent evidence, that setting
aside the default judgment would cause so much prejudice to plaintiff that the
court will not set aside the judgment even if defendant’s defenses based on the
mediation and arbitration clauses are meritorious.  As long as sufficient
evidence and reasonable analysis supported the trial court’s decision, I would
affirm that ruling.  

¶ 43.       But the trial
court could also conclude that the prejudice to plaintiffs has been quite
modest, or that it can be mitigated by sanctions against defendant in the form
of fees; that defendant itself, rather than its counsel, has not been “culpably
negligent” as we have described that concept in our cases; that the interests
at stake are substantial; that having requested a stay on account of the
mediation and arbitration agreements, plaintiff was estopped from abrogating
its position on that point without additional notice to defendant; and that
defendant’s defenses are, in fact, meritorious.  If those conclusions, or
some combination of them, and a decision to set aside the default judgment were
based on competent evidence and thoughtful analysis, I would affirm that
ruling.  My concern is that in an effort to save the trial court time and
effort in the face of a record that the majority believes will necessarily lead
to a decision to deny defendant’s motion, the majority has muddled our law
concerning waiver, enforcement of arbitration agreements, and the standards for
setting aside a default judgment.  Because I do not believe that the
outcome of a full analysis of the relevant factors, and the evidence supporting
them, is a foregone conclusion on the basis of the record—or lack
thereof—before us, and because I believe that the factors set forth by the
majority in ¶ 14 of its opinion are sufficiently sensitive to guard against an
unjust and inequitably prejudicial decision to set aside a default judgment, I
would remand this case to the trial court for a decision on defendant’s motion
to set aside the default judgment that takes into account defendant’s claimed
defenses based on the mediation and arbitration agreement, the prejudice to
plaintiff, and the various other factors identified in the majority’s opinion.


  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate Justice
 
  











[1]
 Defendant does not contest the effectiveness of service upon its
registered agent’s law partner.





[2]
 For the purposes of this appeal, we accept defendant’s representations as
to the actions and understandings of counsel and of client’s agent.





[3]
 Defendant relied on Rules 55(c) and 60(b) in its motion to set aside the
default judgment.  Rule 55(c) provides: “If a judgment by default has been
entered, the court may set it aside in accordance with Rule 60(b) and not otherwise.” 
Accordingly, we analyze defendant’s motion pursuant to Rule 60(b).





[4]
 Counterclaims are not compulsory under the Rule if “the opposing party
brought suit upon the claim by attachment or other process by which the court
did not acquire jurisdiction to render a personal judgment on that
claim.”  V.R.C.P. 13(a).  Although
plaintiff’s complaint in this case was accompanied by a motion for a writ of
attachment, the complaint itself sought a judgment against defendant for
failure to pay on the contract, and the trial court awarded plaintiff judgment
on this basis.  See Pomfret Farms, 174 Vt. at 282-83, 811 A.2d at
658 (finding that suit subjecting defendant to personal liability—even where
portion of suit related to attachment would not—makes counterclaims
compulsory).  Rule 13(a) thus applies.





[5] 
I concur in the majority’s analysis in sections I and II.A.





[6]  The periods during which the parties
seeking to set aside default judgments failed to invoke arbitration clauses in
the cases cited by the majority were longer than the eight-and-one-half-month
period in question here.  See Lamell, 2007 VT 83, ¶ 4 (two
years); Menorah, 72 F.3d at 220 (one year from filing of suit, longer
from refusal of arbitration); see also Gen. Star Nat’l Ins. Co. v.
Administratia Asigurarilor de Stat, 289 F.3d 434, 438 (6th Cir. 2002)
(seventeen months).